Kurt R. NORDBY and Illinois Farmers Insurance Company, Respondents,

v.

ATLANTIC MUTUAL INSURANCE COMPANY, Appellants.

No. C6-82-492.

Supreme Court of Minnesota.

Feb. 18, 1983.

Mahoney, Dougherty & Mahoney and Richard P. Mahoney, Minneapolis, for appellants.

Rider, Bennett, Egan & Arundel, Eric J. Magnuson and Michael E. Tewksbury, Minneapolis, for respondents.

AMDAHL, Chief Justice.

This action for declaratory judgment was brought to determine the respective liabilities of two insurance companies, Illinois Farmers Insurance Company (Illinois Farmers) and Atlantic Mutual Insurance Compa-

ny (Atlantic). Illinois Farmers provided $25,000 automobile liability insurance coverage to Kurt Nordby, who was employed as a minister by St. Peter's Lutheran Church in Canyon, Minnesota, and by Bethlehem Luthern Church in Twig, Minnesota. Atlantic provided $1,000,000 general liability insurance to each of the churches.

While driving his own automobile on church business, Reverend Nordby was involved in an accident and his only passenger was seriously injured. Reverend Nordby, the driver of the other vehicle, and both churches were named in a lawsuit which was eventually settled for the sum of $280,-000 and a complete release of all parties from further liability. Of the settlement amount, Illinois Farmers paid its policy limit of $25,000, Atlantic paid $250,000, and the driver of the other vehicle paid $5,000. By agreement, the two insurance companies reserved their right to pursue this action, in which Illinois Farmers sought contribution for a pro rata share of the award, for the cost of defending Reverend Nordby and the churches in the original action, and for fees and costs in the present action. The trial court determined Reverend Nordby was an "insured" under the Atlantic policy, but denied proration. Illinois Farmers was awarded one-half the cost of defending the earlier action; costs of defending this action were denied. All of these rulings are challenged on appeal.

We consider first the question of whether Reverend Nordby was an "insured" within the meaning of the endorsement in the Atlantic policy. The parties agree that the churches' liability in this action is governed by the "Non-owned and Hired Automobile Liability" endorsement of the Atlantic policy. The "Persons Insured" section of this endorsement includes this category: "any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the named insured." However, this section later states, "none of the following is an insured: * * * an executive officer with respect to an automobile owned by him or by a member of his household." Reverend Nordby was the president of both church councils and considered himself to be an executive officer of each church. The endorsement was clearly designated as excess insurance over any other collectible insurance. Whereas personal coverage of $1,000,000 for Reverend Nordby would have cost $424, the churches paid only a $25 premium for this endorsement.

The trial court issued findings that Pastor Nordby was a "named insured" under the Illinois Farmers policy, and the churches were "named insureds" under their respective Atlantic policies. An accompanying memorandum began, "The Court concludes that the plaintiff Reverend Nordby was an insured under both the Illinois Farmers and Atlantic Mutual policies. * * *." Atlantic challenges this latter statement as contrary to the terms of its policies; it does not deny coverage for vicarious liability (as an excess carrier), but challenges the court's apparent extension of coverage to include the personal liability of an employee.

■ Illinois Farmers emphasizes the ambiguity of the endorsement, which appears to grant coverage under the "persons insured" section, and then withdraws coverage under the "persons not insured" section on the following page of the policy. Atlantic admits this scheme is confusing. It is well established that a "policy should be construed as a whole with all doubts concerning the meaning of language employed to be resolved in favor of the insured." *Canadian Universal Insurance Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977). *See also Security Mutual Casualty Co. v. Luthi*, 303 Minn. 161, 168, 226 N.W.2d 878, 883 (1975). When language of an insurance policy is ambiguous or susceptible of two meanings, it must be given the meaning which is favorable to the finding of insurance coverage. *Hammer v. Malkerson*, 269 Minn. 563, 571, 132 N.W.2d 174, 179 (1964).

■ Although it might have been more artfully drafted, we do not find this endorsement, construed as a whole, to be ambiguous. A careful and complete reading of the endorsement reveals a clear exclusion of coverage for an employee in Reverend Nordby's position: one of the "persons not insured" is "an executive officer with respect to an automobile owned by him or by a member of his household." Identical terms were found to be unambiguous by the Sixth Circuit in the case of *Trinity Universal Insurance Co. v. Cincinnati Insurance Co.,* 513 F.2d 915 (6th Cir.1975), in which that court said,

> The provisions are obviously designed to cover any executive officer on company business driving an automobile not owned by the company, unless the automobile is owned by the executive or a member of his family. The rationale for structuring the coverage in this manner is understandable. The provisions protect corporate officers while they are driving automobiles not owned by the company but at the same time prevent the possible abuse of company officers' wrongfully transferring their own personal risks to the company's insurance by erroneously insisting that they are on incidental company business when a loss occurs. Such abuses could result in the company's insurance having to bear losses which would ordinarily be covered by the officers' personal insurance.

> The provision extending coverage to non-owned vehicles is clearly limited by the phrase "to the extent set forth below." The wording which directly follows specifically excludes coverage with respect to vehicles owned by executive officers or members of their families.

513 F.2d at 918. The exclusion was upheld even though the employee in *Trinity* had been traveling in part on company business when the accident occurred. Similar language was interpreted by this court in *Juve v. Home Indemnity Co.,* 301 N.W.2d 554, 556 (Minn.1981), to exclude coverage for the owner of an automobile, even while engaged in the business of the principal, the insured. We therefore hold that Reverend Nordby was not afforded personal liability coverage by the Atlantic policy. The trial court's memorandum must be interpreted to mean that Reverend Nordby's conduct while in the course and scope of employment was covered under the Atlantic policy, only to the extent of any vicarious liability of the churches.

We turn next to the question of whether proration was properly denied by the trial court. The trial court determined Illinois Farmers to be the primary insurer and Atlantic to be the excess carrier with respect to the claim brought against Reverend Nordby. Illinois Farmers challenges these findings on appeal, alleging the "other insurance" clauses of the policies conflict and damages should be prorated. The Illinois Farmers policy, which specifically insured Reverend Nordby's vehicle, contains a pro rata clause. Atlantic's policy provided only excess insurance.

■ Where two policies contemplate the particular risk equally, liability will be prorated based on the total policy limits. *Integrity Mutual Insurance Co. v. State Automobile and Casualty Underwriters Insurance Co.,* 307 Minn. 173, 176, 239 N.W.2d 445, 447 (1976). However, in *Integrity,* proration was rejected and the insurer of the accident-involved car was found to provide primary coverage while the driver's own policy, containing an excess clause, was held to be secondary. The "closeness to the risk" principle employed in reaching that result was explained in this way: "[T]he insurer whose coverage was effected for the primary purpose of insuring that risk will be liable first for payment, and the insurer whose coverage of the risk was the most incidental to the basic purpose of its insuring intent will be liable last." 307 Minn. at 175–76, 239 N.W.2d at 447.

■ According to our preceding vicarious liability interpretation of the trial court memorandum, we need proceed no farther with this issue, for a policy which insures

the owner against the risk of the owner's own negligence must be considered primary to the more incidental risk of an employer's vicarious liability for that person's negligence. On this basis, the findings of primary coverage by Reverend Nordby's insurer and excess coverage by the churches' insurer are upheld, and proration denied in this case.

The third issue raised on appeal is whether Atlantic was legally obligated to reimburse Illinois Farmers for half of the expenses incurred in defending Reverend Nordby and the two churches. The rule in Minnesota has been that an insured may recover attorney fees in a declaratory judgment action brought by the insured. *See, e.g., Eicher v. Universal Underwriters,* 250 Minn. 7, 83 N.W.2d 895 (1957). Each insurer's obligation to defend is separate and distinct from its duty to provide coverage and pay a judgment, irrespective of other insurance and irrespective of whether it provides primary or excess coverage. An insurer has no right of action against another insurer to recover the cost of defending the insured, since there is no contractual obligation between insurers. *See St. Paul School District No. 625 v. Columbia Transit Corp.,* 321 N.W.2d 41, 48 (Minn.1982); *Iowa National Mutual Insurance Co. v. Universal Underwriters Insurance Co.,* 276 Minn. 362, 366, 150 N.W.2d 233, 236 (1967).

In *St. Paul School District,* an insurer ultimately found not liable under its policy was nevertheless unable to recover the cost of defense from the company which provided coverage but had not participated in defending the insured. We drew an important distinction in that case between an action by the insured and its insurer, and an action between two insurers:

> "[N]o contractual obligation [exists] to make one insurer accountable to the other for a breach of its independent obligation to the insured. The obligation of defending an insured and paying for the defense is a separate obligation existing exclusively between the insurer and the insured."

321 N.W.2d at 48 (quoting *Iowa National Mutual Insurance Co. v. Universal Underwriters Insurance Co.,* 276 Minn. 362, 366, 150 N.W.2d 233, 236 (1967)). Though Reverend Nordby is a nominal plaintiff in this action for declaratory judgment, he incurred no costs in defending the earlier action and was not damaged by an alleged failure of Atlantic to defend. Therefore he is not the real party in interest in this action, and his insurer may not recover the cost of defending him.

The trial court, in reaching an opposite conclusion, relied upon portions of an earlier decision of this court, *American Surety Co. v. State Farm Mutual Automobile Insurance Co.,* 274 Minn. 81, 142 N.W.2d 304 (1966). To the extent that *American Surety* purports to state a rule which differs from the rule cited here, we hold that it was effectively overruled by our decision in *Iowa National.*

If Illinois Farmers cannot recover a share of the cost of defending Reverend Nordby, *a fortiori* it cannot recover the cost of bringing the present action. *St. Paul School District No. 625 v. Columbia Transit Corp.,* 321 N.W.2d 41, 48 (Minn.1982). The district court's ruling on this claim is affirmed.

Affirmed in part and reversed in part.