CHURCH MUTUAL INSURANCE
COMPANY, Plaintiff and
Appellee,

v.

Timothy SMITH, Timothy Miller, and
State Farm Fire & Casualty Company,
Defendants and Appellants,

and

Kimberly K. Kindt, Guardian of the Person and Estate of Keith W. Kindt; Kimberly K. Kindt, Individually, and Kimberly K. Kindt, Guardian Ad Litem of the Minor Children, Evan D. Kindt and Aaron J. Kindt, Defendants.

No. 17899.

Supreme Court of South Dakota.

Considered on Briefs on Jan. 11, 1993.

Reassigned Sept. 7, 1993.

Decided Dec. 8, 1993.

Acie W. Matthews of Pruitt, Matthews & Jorgensen, Sioux Falls, for plaintiff and appellee.

Richard J. Helsper and Eric N. Rasmussen of Erickson, Helsper and Rasmussen, Brookings, for defendants and appellants.

SABERS, Justice (on reassignment).

State Farm appeals from a declaratory judgment denying its claim for reimbursement of attorney fees for the entire period after demand in which Church Mutual, the primary insurer, failed to actively defend the insured. We reverse.

### Facts

Keith Kindt (Kindt) was seriously injured during a softball game conducted under the auspices of the Church Softball League of Sioux Falls on August 6, 1987.[1] As a result of the accident, Kindt was left in a totally dependent condition. On December 29, 1988, Kindt's wife, Kimberly K. Kindt, for herself and as guardian of Keith and their minor children, filed suit against the City of Sioux Falls, Miles Benedict, Timothy Smith (Smith), and Timothy Miller (Miller). Smith and Miller were sued in their capacity as officers of the Church Softball League.[2] Smith was a member of Asbury Methodist Church (Asbury) and Miller was a member of Zion Evangelical Lutheran Church (Zion). Neither Smith nor Miller participated in or

---

1. Kindt, a player, was injured when a player from another team swung at a pitch and lost control of the bat. The bat struck Kindt in the head while he was sitting on a bench along third base.

2. The City of Sioux Falls owned the field and Benedict was the President of the Sioux Falls Church Softball League.

attended the softball game at which the accident occurred.

Both Smith and Miller had homeowner's insurance through State Farm. Each contacted State Farm regarding the pending litigation and State Farm hired counsel to handle their defenses.

In a letter dated February 27, 1989, State Farm contacted agents of Church Mutual requesting them to determine whether Smith and Miller were covered under Church Mutual's policies with Asbury and Zion. Church Mutual had issued identical multi-peril policies of insurance to both Asbury and Zion.

In response, Church Mutual hired counsel ("coverage counsel") to render an opinion as to whether coverage existed. On April 6, 1989, Church Mutual's coverage counsel rendered his opinion that no coverage should be afforded Smith and Miller.

On August 14, 1989, Smith and Miller each wrote to Church Mutual again requesting coverage. Smith's and Miller's letters were not received until November 8, 1989. On November 21, 1989, Church Mutual, through its general counsel, responded with a reservation of rights letter denying Smith and Miller coverage, but agreeing to provide them a defense by hiring separate counsel. At the same time, Church Mutual authorized its coverage counsel to begin this declaratory judgment action asking the court to determine whether coverage existed for Smith and Miller under the Church Mutual policies.

The declaratory judgment action commenced on January 17, 1990. The trial court entered its judgment on June 6, 1991, and followed with an amended judgment dated July 26, 1991. Pursuant to the amended judgment, Smith and Miller were determined to be insureds under the policies issued by Church Mutual to Asbury and Zion. The court further found that Church Mutual had the primary coverage and a duty to defend in the Kindt lawsuit and that State Farm was an excess insurance carrier for Smith and Miller. After this decision, Church Mutual actively assumed the role of defending Smith and Miller. While this dispute over coverage and duty to defend was winding its way through the courts, Kindt's underlying lawsuit was being prosecuted. Church Mutual's attorneys provided no assistance to Smith and Miller during this time period.

Following the court's judgment declaring Church Mutual the primary insurance carrier, State Farm filed a motion to recover attorney fees expended in both the declaratory judgment action ($15,223.45) and the Kindt lawsuit against Smith and Miller ($14,725.34). A hearing was held on the motion on October 31, 1991 and the court issued a memorandum opinion dated January 9, 199[2]. It awarded $697.00 for attorney fees expended in the underlying Kindt action between February 27, 1989, the date State Farm requested that Church Mutual provide coverage and defense of Smith and Miller, and November 21, 1989, the date of Church Mutual's reservation of rights letter. State Farm appeals, claiming it is entitled to the entire amount of attorney fees expended in the Kindt action up until the date of the declaratory judgment when Church Mutual actively assumed Smith's and Miller's defense ($14,725.34). State Farm is not appealing the trial court's denial of attorney fees in the declaratory judgment action.

## ISSUE

Whether an excess insurance carrier may recover attorney fees from the primary insurer for the entire period after demand during which the primary insurer fails to actively defend the insured?

## DECISION

This is an issue of first impression for this court. Courts in other jurisdictions which have addressed this issue have arrived at different conclusions.

The cases denying recovery have generally held that both the primary and excess carrier have a duty to defend under their respective contracts and there is no duty flowing from these separate insurance contracts to the other carrier since there is no contractual obligation to anyone other than the insured. *See St. Paul Mercury Ins. Co. v. Huitt,* 336 F.2d 37, 44 (6th Cir.1964); *United States Fidelity and Guar. Co. v. Tri–State Ins. Co.,* 285 F.2d 579, 582 (10th Cir.1960); *Iowa Nat'l*

*Mut. Ins. Co. v. Universal Underwriters Ins. Co.,* 150 N.W.2d 233, 236–37 (Minn.1967); *American Surety Co. v. State Farm Mut. Auto. Ins. Co.,* 142 N.W.2d 304, 306 (Minn. 1966).

Courts which have allowed recovery of attorney fees have done so on equitable principles such as unjust enrichment or denying a party to profit from its failure to perform its broad duty to defend. *See Farm & City Ins. Co. v. United States Fidelity and Guar. Co.,* 323 N.W.2d 259, 261 (Iowa 1982); *Farmers Ins. Group v. Progressive Casualty Ins. Co.,* 84 Mich.App. 474, 269 N.W.2d 647, 653 (1978); *Continental Casualty Co. v. Zurich Ins. Co.,* 57 Cal.2d 27, 17 Cal.Rptr. 12, 18, 366 P.2d 455, 461 (1961). We believe the cases allowing recovery represent the better view. *Farm & City Ins. Co.,* 323 N.W.2d at 261. *See also Continental Casualty Co.,* 366 P.2d at 461 ("We find no roadblocks to such a result and we think that the considerations which lead to it are more persuasive than any reasons suggested to the contrary.").

State Farm claimed attorney fees not only for the time period prior to Church Mutual's reservation of rights letter, but also for the time period following Church Mutual's reservation of rights letter in which Church Mutual did not actively defend Smith and Miller. The trial court, however, held State Farm failed to present any testimony or evidence that Church Mutual's participation during this time was inadequate. Church Mutual did retain counsel who reviewed depositions and kept abreast of the case in order to be prepared to take over Smith's and Miller's defense if the court decided it was the primary insurer. Church Mutual argues that State Farm has not shown that the level of participation of Church Mutual's counsel was below any established standard.

While the trial court found that State Farm failed to petition the court for a determination of Church Mutual's obligations and that Church Mutual's declaratory action was

not without merit because it involved an area of law which had not been ruled upon in this court, it also found that:

1. Smith and Miller were insured under the Church Mutual policies.

2. Church Mutual had the primary coverage and the duty to defend the Kindt lawsuit.

3. State Farm was an excess insurance carrier for Smith and Miller.

4. Church Mutual did not readily participate until this court ruled that coverage existed.

It is clear that Church Mutual was asked to perform its duty and defend Smith and Miller as early as February 27, 1989. Instead, Church Mutual hired Foster and Company to investigate and determine whether coverage existed. Coverage counsel for Church Mutual denied coverage on April 6, 1989. In response to Smith's and Miller's second requests for coverage, Church Mutual responded with a reservation of rights letter on November 21, 1989, denying coverage but agreeing to provide counsel. "Trial counsel" was not hired by Church Mutual to actually represent Smith and Miller, however, but to "step in and do a good job without undue delay in case the need arose." Later, Church Mutual brought a declaratory judgment action to determine the coverage question. Throughout this time, the Kindt lawsuit was proceeding through the courts and Church Mutual was in violation of its duty to defend. We see no real difference between a primary carrier who refuses to defend and one who agrees to defend but does not actually do so.[3] Likewise, hiring "trial counsel" for the carrier's benefit does not provide a defense to Smith and Miller.

The trial court's findings clearly establish these facts and show State Farm is entitled to reimbursement of its attorney fees of $14,725.34 incurred during this time. Despite this, the trial court only awarded $697.00 in

---

**3.** *See* trial court's Conclusion of Law VII which provides in part:

3. If the primary refuses coverage and refuses to defend, and the excess or other primary or pro-rata insurer defends, the latter insurer may seek reimbursement for its defense costs and fees.

**4.** If the primary carrier refuses coverage, but *defends,* under a reservation of rights, *generally* the excess carrier has no recourse for costs and fees.

attorney fees. This is not a discretionary matter. It is a matter of law. The trial court's decision is inconsistent with its own findings. *See R & S Constr. Co. v. BDL Enter., Inc.*, 500 N.W.2d 628, 630 (S.D.1993) (citations omitted) (conclusions of law are reviewed de novo and must be supported by findings of fact).

Where the trial court determines, as it did here, that Church Mutual was the *only* primary carrier and State Farm was the *excess carrier*, Church Mutual should be required to reimburse State Farm for all attorney fees incurred because of its failure to perform its duty to defend. *Farmers Ins. Group*, 269 N.W.2d at 653 ("[T]he better rule seems to be to allow the excess insurer subrogation recovery for defense costs incurred. To hold otherwise, would encourage insurers to deny coverage and subsidize refusal to defend. Unless attorney fees can be recovered, insurance companies might profit by unscrupulous tactics."). Otherwise, State Farm is being unfairly punished for voluntarily performing its "secondary" duty to defend its insured and Church Mutual is being unjustly enriched for shirking its "primary" duty to defend its insured. *Farm & City Ins. Co.*, 323 N.W.2d at 261. ("If indemnity is not ordered, the primary carrier is permitted to profit from its wrongful failure to defend" and the excess carrier is "penalized for bearing the burden alone when the primary carrier refuses to perform its duty."); *See also American Concept Ins. Co. v. Certain Underwriters at Lloyds of London*, 467 N.W.2d 480 (S.D.1991) (primary insurer not entitled to recover from the excess insurer any portion of its expenses incurred in providing defense when settlement was within primary

insurer's policy limits); *Continental Casualty Co.*, 366 P.2d at 461.[4]

Therefore, Church Mutual is required to reimburse State Farm for all attorney's fees incurred from the time Church Mutual received notice of the Kindt suit to the time it began actively defending Smith and Miller. We reverse and remand for this purpose.

MILLER, C.J., and HENDERSON, J., concur.

WUEST and AMUNDSON, JJ., dissent.

AMUNDSON, Justice (dissenting).

The trial court found that Church Mutual had a meritorious claim regarding coverage which had not been ruled on in this jurisdiction. When the trial court declared Church Mutual responsible as primary insurer, it did not find that Church Mutual had dealt in an unscrupulous manner. Although the question of coverage is always liberally construed in favor of an insured, this does not preclude an insurance company from requesting a court to rule on coverage. This is not a case involving reimbursement of the costs of defense between an insured and his carrier, but involves a dispute between two insurance companies insuring against the same risk. In fact, this record does not indicate that State Farm would not have incurred the same expenses in defending its exposure to liability had Church Mutual undertaken the defense from the beginning. A finding by a court establishing primary and excess coverage does not totally relieve an excess carrier's exposure.

Under these facts, I would adopt the rationale from the cases holding that no duty flows from an insurance contract to another

---

4. According to *Continental Casualty Co.*:

> Under general principles of equitable subrogation, as well as pursuant to the rule of prime importance—that the policy is to be liberally construed to provide coverage to the insured— it is our view that all obligated carriers who have refused to defend should be required to share in costs of the insured's defense, whether such costs were originally paid by the insured himself or by fewer than all of the carriers. A contrary result would simply provide a premium or offer a possible windfall for the insurer who refuses to defend, and thus, by leaving the insured to his own resources, enjoys a chance that the costs of defense will be provided by

> some other insurer at no expense to the company which declines to carry out its contractual commitments. As commented in another context by the court in *Employers [] Ins. Co. v. Pac. Indem. Co.*, (1959) 167 Cal.App.2d 369, 381, 334 P.2d 658, quoting from *Massachusetts Bonding & Ins. Co. v. Car & Gen. Ins. Corp.*, D.C. (1957) 152 F.Supp. 477, 482, "there are * * * compelling reasons for allowing recovery when the other insurer has not entered the case at all or has refused to defend the insured against suit by the injured party. * * * [T]his view represents the current trend and better rule in the 'volunteer' situations."
> 366 P.2d at 461.

carrier since the contractual obligation under each contract is solely to the insured. *See St. Paul Mercury Ins. Co. v. Huitt*, 336 F.2d 37, 44 (6th Cir.1964); *United States Fidelity & Guar. Co. v. Tri–State Ins. Co.*, 285 F.2d 579, 582 (10th Cir.1960); *Iowa Nat'l Mut. Ins. Co. v. Universal Underwriters Ins. Co.*, 276 Minn. 362, 150 N.W.2d 233, 236–37 (1967); *American Surety Co. v. State Farm Auto Ins. Co.*, 274 Minn. 81, 142 N.W.2d 304, 306 (1966).

Further, in *St. Paul Sch. Dist. v. Columbia Transit*, 321 N.W.2d 41 (Minn.1982), the insurer ultimately found not liable for contribution under an exclusion in its policy was nevertheless unable to recover the cost incurred in defending the personal injury action from another company which was involved in the litigation. The court drew an important distinction in that case between an action involving the insured and its insurer, and an action between two insurers:

> "[No] contractual obligation [exists] to make one insurer accountable to the other for a breach of its independent obligation to the insured. The obligation of defending an insured and paying for the defense is a separate obligation existing exclusively between the insurer and the insured."

*Id.*, at 48 (quoting *Iowa Nat'l Mut. Ins. Co.*, 150 N.W.2d at 236).

These two insurance companies insured against the same risk and their policies furnished a defense for their insureds. This is a duty to defend which is personal to each insurer. The expenses incurred by State Farm in defending as required by its policy is a cost of doing business. Therefore, State Farm should not be entitled to recover the costs of defending its insured pursuant to its contractual duty, because these costs were incurred to protect the company's interest.*

I would affirm the decision of the trial court.

I am authorized to state that Justice WUEST joins in this dissent.

---

* The end result in this case was, as the trial court found, Church Mutual contributed its policy limits of one million dollars in settlement of the

Kindt lawsuit and State Farm contributed nothing toward this settlement.