CARGILL, INCORPORATED,
et al., Appellants,

v.

ACE AMERICAN INSURANCE
COMPANY, et al.,
Respondents,

Affiliated FM Insurance Company,
et al., Respondents,

Allianz Underwriters Insurance
Company, et al.,
Respondents,

Allied World Assurance,
et al., Defendants,

American Guarantee and Liability
Insurance Company, et al.,
Respondents,

American Home Assurance Company,
et al., Respondents,

American Employers' Insurance
Company, et al., Respondents,

Arch Reinsurance Ltd., Respondent,

Associated International Insurance
Company, Respondent,

Everest Reinsurance Company,
et al., Respondents,

Great American Assurance
Company, Respondent,

Certain Underwriters at Lloyd's,
et al., Respondents,

Employers Mutual Casualty Company,
et al., Respondents,

General Security Indemnity Company
of Arizona, et al., Respondents,

Hartford Accident and Indemnity
Company, et al., Respondents,

Pennsylvania Lumbermens Mutual
Insurance Company, et al.,
Respondents,

Minnetonka Insurance Company,
Respondent,

Liberty Mutual Insurance Company,
Respondent,

Northwestern National Insurance,
Respondent,

St. Paul Fire and Marine Insurance
Company, et al., Respondents,

The Orion Insurance Company,
PLC, et al., Respondents,

XL Insurance America,
Inc., Respondent.

No. A08–1082.

Court of Appeals of Minnesota.

May 26, 2009.

Thomas C. Mielenhausen, Christoper H. Yetka, Lindquist & Vennum, P.L.L.P., Minneapolis, MN; and Paul L. Langer, Proskauer Rose, L.L.P., Chicago, IL, for appellants.

Michael J. Cohen, Meissner, Tierney, Fisher & Nichols, S.C., Milwaukee, WI; and Robert W. Kettering, Theodore J. Smetak, Christopher D. Newkirk, Arthur, Chapman, Kettering, Smetak and Pikala, P.A., Minneapolis, MN, or respondent Liberty Mutual.

Charles E. Spevacek, Amy J. Woodworth, Meagher & Geer, P.L.L.P., Minneapolis, MN, for respondents St. Paul Fire, et al.

Considered and decided by LARKIN, Presiding Judge; MINGE, Judge; and STAUBER, Judge.

## OPINION

STAUBER, Judge.

Pursuant to Minn. R. Civ.App. P. 103.03(i), the district court certified the following question for appellate review as important and doubtful: "Can a court order primary insurers, who insure the same insured for the same risks, and whose policies are triggered for defense purposes, to be equally liable for the costs of defense where there is otherwise no privity between the insurers?" Because an insured, as a part of its contractual duty to cooperate, has an affirmative obligation to preserve the insurer's opportunity to obtain contribution from other primary insurers with a similar duty to defend, and because a district court has the equitable authority to award such relief when an insured refuses to cooperate, we answer the certified question in the affirmative.

## FACTS

■ In 2005, the state of Oklahoma sued appellants Cargill, Inc., and Cargill Turkey Production, LLC (collectively referred to as "Cargill") for damages arising out of Cargill's waste disposal practices at poultry operations in or around that state, which allegedly contributed to the pollution of the Illinois River Watershed. The same year, Cargill was also named as a defendant in a series of lawsuits in Arkansas alleging that contaminants found in chicken waste produced at Cargill's plants had caused physical harm to several plaintiffs. Because it was unclear when the harm alleged in these lawsuits first began, Cargill provided notice of the pending litigation to its primary and umbrella-level liability insurers from the past several decades who potentially had a duty to defend, to indemnify, or both. Upon receiving notice, respondent Liberty Mutual Insurance, offered to fund Cargill's defense and requested that Cargill execute a customary and neutral loan receipt agreement[1] to allow Liberty Mutual to seek contribution from the more than 50 other non-participating insurers for the multi-million dollar litigation costs in defending against the

---

1. A loan receipt agreement is a device commonly used to resolve insurance disputes. See, e.g., Jostens, Inc. v. Mission Ins. Co., 387 N.W.2d 161, 164 (Minn.1986). Under such an arrangement, an insurer with a duty to defend agrees to loan the insured the amounts necessary to defend against a lawsuit in exchange for the insured's promise to pursue an action in its own name to recover the costs of defense from other duty-to-defend insurers. See id. at 163. The insured then repays the loan with funds recovered in the subsequent action. Id. Loan receipt agreements are an effective tool for insurers because they essentially allow insurers to seek contribution from other duty-to-defend insurers despite the absence of privity between them.

lawsuits. None of the 50–plus insurers would agree to assume responsibility for defense costs without the ability to seek contribution from other insurers.

On February 14, 2007, Cargill sought a declaratory judgment and other relief against over 50 insurers who allegedly had an obligation to defend and indemnify Cargill in the lawsuits. Cargill asked the district court to declare that each insurer had an individual duty to defend and indemnify. Liberty Mutual filed cross claims against several insurers seeking a declaration that it would have a right to subrogation or contribution from them in the event that Liberty Mutual solely incurred defense costs on behalf of Cargill. The district court bifurcated the proceedings, with the first phase relating solely to the duty to defend.[2]

On October 8, 2007, Liberty Mutual and several other primary insurers again notified Cargill that, subject to their respective reservations of rights, they would be willing to enter into a neutral loan receipt agreement with Cargill. Under the terms of the proposed agreement, the insurers would loan Cargill an amount equal to the defense costs in the underlying litigation on the condition that Cargill would grant the insurers the right to seek repayment of the loan from any other primary insurance providers with a duty to defend. Liberty Mutual also tendered a check for $704,762.22 as partial payment for Cargill's defense costs, contingent on Cargill signing the agreement.[3] Cargill declined the offer out of concern that it could become responsible for additional deductible payments and retentions to the contributing insurers and because contribution might be sought from Cargill's "fronted policies" incorporated into its sophisticated insurance scheme. It appears from the record that some of these fronted policies amounted to self insurance by Cargill, while the others were issued by Cargill's subsidiaries.

Thereafter, Cargill moved for partial summary judgment as to Liberty Mutual's duty to defend. As part of its motion, Cargill argued that it could select Liberty Mutual to fully and exclusively defend against the underlying litigation, that it had no obligation to enter into a loan receipt agreement with Liberty Mutual, and that, absent such an agreement, Liberty Mutual had no right to seek contribution from any other insurer who has a defense obligation. Liberty Mutual filed a cross-motion for partial summary judgment seeking an order creating a constructive loan receipt agreement or a similar declaration that Liberty Mutual could pursue contribution from other insurers without a loan receipt agreement.

Prior to the summary judgment hearing, Cargill proposed a new "framework" for a possible loan receipt agreement. Cargill's proposal would have permitted Liberty Mutual to pursue contribution for defense costs from certain primary insurers, but precluded recovery of defense costs from Cargill, its insurance subsidiaries, or the issuers of its fronted policies. The proposal also would have required Liberty Mutual to indemnify Cargill from the contribution demands of any other primary insurers. Liberty Mutual rejected the offer.

---

**2.** The district court chose to postpone consideration of the duty to indemnify until the second phase because "the duty of indemnification may not arise until the underlying lawsuits are concluded (unless earlier settlements are negotiated), and that could be years down the road."

**3.** Liberty Mutual asserts that at least $5.4 million in defense costs had been incurred by Cargill as of 2007.

The district court subsequently denied Cargill's motion and granted partial summary judgment in favor of Liberty Mutual. Although the court acknowledged that no privity of contract exists between Liberty Mutual and other insurers with a similar duty to defend, it concluded that it would be inequitable to require Liberty Mutual to assume the multi-million dollar cost of defending Cargill without any right to contribution, stating the following in the memorandum accompanying its order:

> The point here is that Cargill, a sophisticated business entity, has created this insurance structure, and it seems inequitable that they should now be permitted to avoid cooperating with Liberty Mutual (the insurer who they have self-chosen to defend their liability claims) because of their concern that the insurance structure that they have created may have some adverse consequences to go along with the benefits they have received.

The court also posited that Cargill's refusal to cooperate with Liberty Mutual's request for a loan receipt agreement constituted a violation of its policy obligations to Liberty Mutual.

Accordingly, the court determined that the most equitable result would be to allow for an equitable apportionment of defense costs among the numerous insurers because it would "encourag[e] ... insurers to promptly undertake the insured's defense ... if [they] know from the beginning that defense costs will be apportioned equally among those insurers whose policies are triggered." In order to facilitate the sharing of defense costs, the court ruled that Liberty Mutual was allowed to seek contribution from other liable primary insurers without the necessity of a loan receipt agreement. In the alternative, the court indicated that it could impose a constructive loan receipt agreement, and attached

a sample agreement with appropriate provisions to its order. It is noteworthy that the court did not decide whether Cargill or its fronted insurance arrangements would be included in the allocation of defense costs, stating "[s]ome of the case law relating to allocation of defense costs treats captive company reinsurance and self-insurance differently than it treats mere liability for a deductible."

The court certified for appeal the issue of whether a district court can "order primary insurers, who insure the same insured for the same risks, and whose policies are triggered for defense purposes, to be equally liable for the costs of defense where there is otherwise no privity between the insurers." The court concluded that the question was "important because it relates to substantial underlying but related litigation which is likely to persist for years and to be very expensive ... [and] is an issue of state-wide impact." The question was also declared doubtful "because there appear to be unresolved conflicts in the Minnesota appellate court decisions, which on more than one occasion have indicated that each case is different and must be resolved on its specific facts."

## ISSUE

When an insured maintains numerous insurance policies and insurance arrangements and the insured demands that one primary insurer pay all defense costs and refuses to cooperate with that insurer to preserve a full right to contribution, does a district court have the authority to fashion a remedy that will allow the primary insurer to preserve its claim for contribution for defense costs?

## ANALYSIS

 Minn. R. Civ.App. P. 103.03(i) provides that an appeal may be taken to this court from an order that denies a motion for summary judgment if the district court "certifies that the question pre-

sented is important and doubtful." In deciding a certified question arising from denial of summary judgment, this court "review[s] the record to determine whether a genuine issue of material fact exists and whether the law was correctly applied." *Murphy v. Allina Health Sys.*, 668 N.W.2d 17, 20 (Minn.App.2003), *review denied* (Minn. Nov. 18, 2003). Absent genuine issues of material fact, appellate courts review certified questions de novo. *Employers Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 493 (Minn.1998). Here, de novo review is appropriate because the material facts are not in dispute.

Cargill challenges the district court's preservation of apportionment of defense costs among all primary insurers, claiming it can select any one of its many individual insurers to tender a defense because each insurer owes a separate and distinct obligation to pay the defense costs without contribution from other similarly obligated insurers. Cargill also argues that, absent a loan receipt agreement, no privity of contract exists among the insurers that would allow Liberty Mutual to seek contribution. Conversely, Liberty Mutual contends that a loan receipt agreement is only necessary in situations where an insurer has actually tendered a defense. Liberty Mutual also argues that principles of good faith and fair dealing, as well as the cooperation clause contained in the Liberty Mutual insurance policy, require Cargill to cooperate in enabling Liberty Mutual to preserve the opportunity to obtain contribution from other insurers and further obligates Cargill to enter into a neutral loan receipt agreement with Liberty Mutual in exchange for its tender of defense.

*1. Is a loan receipt agreement presumptively necessary to equally apportion defense costs among the insurers?*

■ The first issue to consider in answering the certified question is whether a primary insurer with a duty to defend must normally enter into a loan receipt agreement in order to obtain contribution from other primary duty-to-defend insurers. Cargill argues that this issue is controlled by the supreme court's ruling in the seminal case of *Iowa Nat'l Mut. Ins. Co. v. Universal Underwriters Ins. Co.*, 276 Minn. 362, 150 N.W.2d 233 (1967). We agree. In *Iowa National*, the supreme court concluded that an insurer who undertakes the defense of an insured generally cannot pursue contribution for defense costs from another insurer with a parallel duty to defend because no privity of contract or joint liability exists between the insurers. *Id.* at 367–68, 150 N.W.2d at 236–37 ("The controversy between the two insurance carriers who have no contractual relationship to each other cannot operate to alter the obligation that each owes unto the insured, with whom they each have a contract."). Nor can reimbursement be based on principles of subrogation since each insurer has a "separate and distinct" obligation to defend that allows the insured to "call upon either or both carriers to fulfill their policy obligations." *Id.* at 368, 150 N.W.2d at 237. These principles apply here because no privity of contract exists between Liberty Mutual and the other primary insurers.

Liberty Mutual claims that the holding in *Iowa National* is limited to situations where an insurer seeks contribution *after* tendering a defense. In support of its argument, Liberty Mutual cites *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161 (Minn.1986). In *Jostens*, the supreme court concluded that, although an insurer who "undertakes to defend cannot pass on its defense expenses to the other carriers," when no primary insurer undertakes a defense of an insured, a district court may apportion liability for defense costs equally

among the primary insurers. *Id.* at 166–167. However, the facts here are distinguishable from *Jostens* because in that case the insured had entered into a loan receipt agreement with one of its insurers, thereby avoiding the privity issue that formed the basis for the *Iowa National* holding. *Id.* at 163–64; *see also Home Ins. Co., v. Natl. Union Fire Ins. of Pittsburgh*, 658 N.W.2d 522, 527 (Minn.2003) (distinguishing *Iowa National* from *Jostens* on the basis that *Jostens* involved a loan receipt agreement). Unlike the insured in *Jostens*, Cargill refuses to sign a neutral loan receipt agreement.

Liberty Mutual also relies upon *Wooddale Builders, Inc. v. Maryland Cas. Co.*, 722 N.W.2d 283 (Minn.2006), and *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724 (Minn.1997). In *Wooddale Builders*, the supreme court applied the rationale of *Jostens* to apportion liability for defense costs equally among five insurers who had a duty to defend an insured despite the absence of a loan receipt agreement. *See* 722 N.W.2d at 301–04. But *Wooddale Builders* is of limited value to resolving this issue because the insurers in that case had waived the *Iowa National* rule and several had already tendered a defense to the insured. *Id.* at 302 n. 15, 303, 150 N.W.2d 233.

Finally, in *Domtar*, an insurer who refused to defend its insured and had not been able to obtain a loan receipt agreement challenged the district court's decision to hold it liable for the insured's entire defense costs despite the fact that the insured had also sought payment from another duty-to-defend insurer who had not participated in the lawsuit.[4] 563 N.W.2d at 739. In affirming the decision, the supreme court quoted *Jostens* for the proposition that "an insured 'may . . . recover

his costs . . . from *either or both* insurers' and that only *'as between them'* are insurers equally liable for such costs." *Id.* (quoting *Jostens*, 387 N.W.2d at 167). The court then observed that the insurer's "remedy, if any, is to seek contribution from [the other primary insurer]." *Id.*

This language from *Domtar* does not support the conclusion that an insurer is entitled to contribution in the absence of a loan receipt agreement. The issue in that case was not whether an insurer could seek contribution from another insurer, but whether an insurer could limit its defense obligations to an insured on the basis that another primary insurer had a parallel contractual duty to provide a defense. *See id.* Thus, in declining to grant the insurer relief, the court in *Domtar* was merely applying the holding from *Iowa National* that each insurer has a separate and distinct obligation to defend an insured. We also find it noteworthy that the court stopped short of stating that the insurer could seek contribution from the other insurer. *See id.* (stating that the insurer's remedy *"if any"* is to seek contribution from the other insurer (emphasis added)).

As a whole, our review of the relevant case precedent convinces us that *Iowa National* controls this issue. Due to the lack of contractual privity between Liberty Mutual and its co-primary duty-to-defend insurers, Liberty Mutual has no right to contribution in the absence of a loan receipt agreement. *See Iowa Nat'l*, 276 Minn. at 367–68, 150 N.W.2d at 236–37.

2. *Can a primary insurer with a duty to defend condition its tender of defense on the insured's execution of a neutral loan receipt agreement?*

 Relying on the principle that each insurer owes a separate and distinct duty

---

4. The insured's dispute with the other insurer over defense costs was not before the court because the other insurer was disputing personal jurisdiction. 563 N.W.2d at 728 n. 1.

to defend, Cargill claims that it is under no obligation to enter into a loan receipt agreement with Liberty Mutual. Cargill also argues that Minnesota courts have no authority to impose a constructive loan receipt agreement. We disagree with both assertions.

Although each insurer has a separate and distinct obligation to defend, in situations such as this, where multiple primary insurers have offered to tender a defense in exchange for a loan receipt agreement, we believe that principles of good faith and fair dealing impose an affirmative obligation on the insured to cooperate by entering into a neutral loan receipt agreement that equitably apportions liability between primary insurers. *See* Minn.Stat. § 336.1–304 (2008) (stating that "[e]very contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement"); *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn.1995) (providing that "every contract includes an implied covenant of good faith and fair dealing"). Our ruling is based on the supreme court's holding in *Jostens*. In deciding to equally apportion defense costs among insurers who had refused to tender a defense, the *Jostens* court repeatedly emphasized that a court must "look at the situation as it was for [the insured] at the time it was confronted with [the underlying lawsuit]." 387 N.W.2d at 167. "Viewed from this standpoint, it hardly seems fair [that Liberty Mutual] should now be responsible for the entire costs simply because [Cargill] has selected [Liberty Mutual] rather than [the other duty-to-defend insurers] to pay them." *Id.* Allowing Cargill to strategically select one insurer to bear the entire multi-million dollar burden of defense when over 50 other insurers have insured Cargill against the same risks is incompatible with the underlying rationale of *Jostens*.[5] As the *Jostens* court noted, "[w]ho should pay the insured's defense costs should not depend on the whim or caprice of the insured, when, at the time the defense was needed, [numerous] insurers arguably had a duty to defend." *Id.*

Requiring Cargill to enter into a neutral loan receipt agreement also comports with the terms of the cooperation clause contained in the Liberty Mutual insurance policy. The clause requires Cargill to assist Liberty Mutual in "enforcing any right of contribution or indemnity against any person or organization who may be liable to [Cargill]." Therefore, Cargill has a contractual obligation to cooperate with Liberty Mutual as its insurer. By declining to execute a neutral loan receipt agreement customarily used in the insurance industry in order to impose upon one insurer the liability for the entire multi-million dollar defense costs, Cargill has acted in bad faith. *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn.App. 1998) (stating that bad faith occurs when a party refuses to fulfill some duty or contractual obligation based on an ulterior motive, not an honest mistake regarding one's rights or duties). The basis for Cargill's refusal was to avoid contribution for defense costs from its "fronted policies."

Our decision

is supported by policy reasons as well as precedent. [As the supreme court stated] in *Jostens* [,] . . . allowing an insured to seek recovery of defense costs from any insurer, but making insurers equally liable among themselves, will encourage the insurers, when tendered a defense, to resolve promptly the duty to defend

---

5. We also find it noteworthy that many of Cargill's primary insurers have supported

Liberty Mutual's position despite their own potential liability for a portion of these costs.

issue either by some cooperative arrangement between them, or by a declaratory judgment action, or by some other means.

*Wooddale Builders,* 722 N.W.2d at 303 (quotation omitted). Without preserving the opportunity to recover an equitable apportionment of defense costs among insurers who have yet to tender a defense, insurers would be at the mercy of the insured who could unilaterally select an insurer or insurers to defend. Such a policy would undoubtedly cause insurers to adopt the "wait and see" approach that *Jostens* hoped to avoid. *See Jostens,* 387 N.W.2d at 167. Therefore, protecting the rights of an insurer through a court-ordered loan receipt agreement is also beneficial to the insured because it eliminates an insurer's incentive to delay or refuse to undertake a defense.

■ Accordingly, if an insured in bad faith refuses to enter into a neutral loan receipt agreement, we conclude that Minnesota courts, when timely asked, may protect an insurer by imposing a constructive loan receipt obligation. On this record, such court action is necessary to enforce Cargills duty to cooperate and its obligation of good faith and fair dealing in commercial transactions so as to preserve Liberty Mutuals opportunity to obtain an ultimately equitable apportionment of defense costs among insurers with a duty to defend.

## DECISION

The district court has the authority to impose a constructive loan receipt agreement that allows a primary insurer with a duty to defend Cargill the opportunity to obtain equitable apportionment of defense costs among all primary insurers with a duty to defend.

**Certified question answered in the affirmative.**

LARKIN, Judge (dissenting).

I respectfully dissent. Every insurer owes its insured an independent duty to defend, and an insurer that provides a defense is not entitled to recover its costs from the insurers that did not provide a defense. *Wooddale Builders, Inc. v. Maryland Cas. Co.,* 722 N.W.2d 283, 302 (Minn.2006) (citing *Iowa Nat'l Mut. Ins. Co. v. Universal Underwriters Ins. Co.,* 276 Minn. 362, 367–68, 150 N.W.2d 233, 236–37 (1967)). Absent a loan-receipt agreement, an insurer that undertakes the defense of its insured may not seek recovery of defense costs from other insurers that failed to provide a defense. *Id.*

Due to the lack of contractual privity between Liberty Mutual and Cargill's other insurers, Liberty Mutual has no right to contribution in the absence of a loan-receipt agreement. *See Iowa Nat'l,* 276 Minn. at 366–68, 150 N.W.2d at 236–37. A conclusion that principles of equity and fundamental fairness obligate Cargill to enter into a loan-receipt agreement with Liberty Mutual because Liberty Mutual offered to defend Cargill is inconsistent with the *Iowa National* holding, which specifically rejected an argument that equitable concerns justify an order allowing an insurer that defends its insured to recover its costs from other insurers. *Id.* at 365–69, 150 N.W.2d at 235–37 (considering whether a defending insurer should be allowed to recover its defense costs from another insurer based on an equitable principle arising out of a circumstance by which the non-defending insurer was said to have been unjustly enriched by reason of the expenses incurred by the defending insurer).

In *Iowa National* the supreme court concluded that the equities between a defending insurer and non-defending insurer were "at best equal," reasoning that the

expenses incurred by the defending insurer were expenses that it agreed to incur pursuant to its contract with its insured. *Id.* at 368–69, 150 N.W.2d at 237. The supreme court noted that the defending insurer received premiums from its insured in exchange for its agreement to assume the risk of insuring these expenses, stating, "These charges are not in the nature of a payment of a debt for which another was primarily liable. They are [the defending insurer's] expense of doing business." *Id.* at 369, 150 N.W.2d at 237–38; *see Jostens, Inc. v. Mission Ins. Co.,* 387 N.W.2d 161, 166 (Minn.1986) (recognizing that *Iowa National* rejected the argument that equity compelled shared liability among insurers who were not in privity stating, "the insurer assuming the defense has no cause to complain because it is protecting its own interests and *is only doing what it agreed and was paid a premium to do*") (emphasis added). Thus, equity does not compel shared liability among multiple insurers with a duty to defend. *Iowa Nat'l,* 276 Minn. at 368, 150 N.W.2d at 237 (stating, "The obligation is several and the carrier is not entitled to divide the duty nor require contribution from another absent a specific contractual right.").

Likewise, equity does not compel the imposition of contractual privity in an effort to achieve shared liability. *See Cady v. Bush,* 283 Minn. 105, 110, 166 N.W.2d 358, 362 (1969) (stating, "it must be kept in mind that the principle of unjust enrichment should not be invoked merely because a party has made a bad bargain" and "[c]ourts are not warranted in interfering with the contract rights of parties as evidenced by their writings which purport to express their full agreement"). And it is not within the purview of this court to extend the supreme court's holding in *Jostens,* which is factually distinguishable given the existence of a loan-receipt agreement in that case. 387 N.W.2d at 164–65. We are an error-correcting court. *Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn. 1988). "[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." *Tereault v. Palmer,* 413 N.W.2d 283, 286 (Minn.App.1987), *review denied* (Minn. Dec. 18, 1987). Moreover, we are not a policy-setting court. *Sefkow,* 427 N.W.2d at 210 ("The function of the court of appeals is limited to identifying errors and then correcting them."). And we have previously stated that public policy arguments, "while appealing, cannot overcome Minnesota's express preference that each insurer fulfill its independent duty to cover a mutual insured." *Andrew L. Youngquist, Inc. v. Cincinnati Ins. Co.,* 625 N.W.2d 178, 187 (Minn.App.2001) (rejecting the argument that public policy mandates that one insurer should not profit from its wrongful failure to defend while another insurer is punished for performing its obligation).

Cargill has a contractual right to a defense from Liberty Mutual irrespective of other insurance. *Iowa Nat'l,* 276 Minn. at 367, 150 N.W.2d at 236–37; *see also Nordby v. Atlantic Mut. Ins. Co.,* 329 N.W.2d 820, 824 (Minn.1983) (stating, "Each insurer's obligation to defend is separate and distinct from its duty to provide coverage and pay a judgment, irrespective of other insurance and irrespective of whether it provides primary or excess coverage"). In the final analysis, Cargill is merely asking Liberty Mutual to provide it with a defense, as Liberty Mutual agreed and was paid a premium to do. This result is in no way harsh or unfair. The result is simply what both of these sophisticated parties bargained for. Liberty Mutual's desire to seek contribution from other insurers cannot operate to alter its obligation to its

insured. *Iowa Nat'l*, 276 Minn. at 367–68, 150 N.W.2d at 237.

The district court posited that Cargill's refusal to cooperate with Liberty Mutual's request for a loan-receipt agreement constituted a violation of its policy obligations to Liberty Mutual. But the district court stopped short of holding that Cargill is contractually obligated to execute a loan-receipt agreement under the terms of the Liberty Mutual insurance policy. The majority cites policy language regarding Cargill's obligation to assist Liberty Mutual in "enforcing any right of contribution or indemnity against any person or organization who may be liable to [Cargill]." Relying on this language, the majority opinion concludes that Cargill has a contractual obligation to cooperate with Liberty Mutual as its insurer and equates cooperation with execution of a loan-receipt agreement. This conclusion is flawed because it presumes that Liberty Mutual has a right of contribution. Liberty Mutual has no right of contribution given the lack of contractual privity between Liberty Mutual and Cargill's other insurers. *See Iowa Nat'l*, 276 Minn. at 366–68, 150 N.W.2d at 236–37.

The policy language does not obligate Cargill to execute a loan-receipt agreement. And it is improper for courts to insert such a requirement into the policy. "[T]he law cannot finish what the parties have left unfinished and thereby create a contract where they intentionally omitted to make one for themselves." *Druar v. Ellerbe & Co.*, 222 Minn. 383, 396, 24 N.W.2d 820, 826 (1946); *see also St. Paul Fire & Marine Ins. Co. v. Ruddy*, 299 F. 189, 196 (8th Cir.1924) ("It is not within the province of the courts to create contracts.").

Because (1) equity does not compel shared liability among multiple insurers with a duty to defend absent contractual privity between the insurers, (2) we are not a policy-setting court and it is not the role of this court to extend existing law, and (3) the district court may not impose extra-contractual terms, I would adhere to the holding in *Iowa National*. Liberty Mutual and Cargill entered into a contractual agreement, whereby Liberty Mutual was to undertake a defense of Cargill and for which Liberty Mutual received premium payments. It is inappropriate for the district court to impose a loan-receipt agreement when the parties' contract does not require one. Absent such an agreement, Liberty Mutual is not entitled to contribution. Accordingly, I would answer the certified question in the negative.