CARGILL, INCORPORATED,
et al., Appellants,

v.

ACE AMERICAN INSURANCE
COMPANY, et al.,
Respondents,

Affiliated FM Insurance Company,
et al., Respondents,

Allianz Underwriters Insurance
Company, et al.,
Respondents,

Allied World Assurance,
et al., Defendants,

American Guarantee and Liability
Insurance Company, et al.,
Respondents,

American Home Assurance Company,
et al., Respondents,

American Employers' Insurance
Company, et al., Respondents,

Arch Reinsurance Ltd., Respondent,

Associated International Insurance
Company, Respondent,

Everest Reinsurance Company,
et al., Respondents,

Great American Assurance
Company, Respondent,

Certain Underwriters at Lloyd's,
et al., Respondents,

Employers Mutual Casualty Company,
et al., Respondents,

General Security Indemnity Company
of Arizona, et al., Respondents,

Hartford Accident and Indemnity
Company, et al., Respondents,

Pennsylvania Lumbermens Mutual
Insurance Company, et al.,
Respondents,

Minnetonka Insurance Company,
Respondent,

Liberty Mutual Insurance Company,
Respondent,

Northwestern National Insurance,
Respondent,

St. Paul Fire and Marine Insurance
Company, et al., Respondents,

The Orion Insurance Company,
PLC, et al., Respondents,

XL Insurance America,
Inc., Respondent.

No. A08–1082.

Supreme Court of Minnesota.

June 30, 2010.

Paul L. Langer, Proskauer Rose LLP, Chicago, IL; and Thomas C. Mielenhausen, Christopher H. Yetka, Lindquist & Vennum P.L.L.P., Minneapolis, MN, for appellants.

Margaret J. Orbon, Clausen Miller P.C., Chicago, IL; and Dale O. Thornsjo, Michael M. Skram, Johnson & Condon, P.A., Minneapolis, MN, for respondents American Home Assurance Company and National Union Insurance Company of Pittsburgh, PA.

Kenneth W. Dodge, Louise A. Behrendt, Stich, Angell, Kreidler & Dodge, P.A., Minneapolis, MN, for respondents One Beacon American Insurance Company, f/k/a Commercial Union Insurance Company and American Employers' Insurance Company.

Robert W. Kettering, Theodore J. Smetak, Paul E.D. Darsow, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN; and Michael J. Cohen, Meissner Tierney Fisher & Nichols S.C., Milwaukee, WI, for respondent Liberty Mutual Insurance Company.

Charles E. Spevacek, Amy J. Woodworth, Meagher & Geer, P.L.L.P., for respondents St. Paul Fire and Marine Insurance Company, St. Paul Surplus Lines Insurance Company, Travelers Casualty & Surety Company, f/k/a The Aetna Casualty & Surety Company; and The Travelers Indemnity Company.

Laura A. Foggan, Amanda Schwoerke, Wiley Rein LLP, Washington, D.C.; and Chad A. Snyder, Law Offices of Chad A. Snyder LLC, Minneapolis, MN, for amicus curiae Complex Insurance Claims Litigation Association.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellants Cargill, Inc., and Cargill Turkey Production, L.L.C. (collectively Cargill), sought a declaratory judgment in Hennepin County District Court against approximately 50 insurance companies. Cargill claimed that each of its insurers has an obligation to defend and indemnify Cargill in lawsuits brought in Oklahoma and Arkansas alleging environmental contamination. Respondent Liberty Mutual Insurance Company filed a counterclaim against Cargill, and cross-claims against several of Cargill's other insurers, seeking a declaration that Liberty Mutual would have subrogation or contribution rights from the other insurers for defense costs.

Cargill moved for partial summary judgment as to Liberty Mutual's duty to defend Cargill, but the district court denied Cargill's motion and granted partial summary judgment for Liberty Mutual. The court declared that Liberty Mutual has the right to seek contribution for defense costs from any insurer that has a duty to defend Cargill for the claims in the underlying litigation, and that costs of defense would be apportioned equally among such insurers. But the district court certified the following question for appellate review: "Can a court order primary insurers, who insure the same insured for the same risks, and whose policies are triggered for defense purposes, to be equally liable for the costs of defense where there is otherwise no privity between the insurers?" The court of appeals answered the question in the affirmative. *Cargill, Inc. v. Ace*

*Am. Ins. Co.,* 766 N.W.2d 58, 60 (Minn. App.2009). We granted both Cargill's petition for review and Liberty Mutual's petition for cross-review on the question of whether the *Iowa National* rule [1] applies to the circumstances of this case. We overrule *Iowa National* and affirm the court of appeals, although on different grounds.

The State of Oklahoma sued Cargill in 2005 under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9628 (2000), and the Solid Waste Disposal Act, 42 U.S.C. § 6972 (2000), alleging that Cargill's poultry waste disposal practices polluted and damaged land and water in the Illinois River Watershed. Cargill was also named as a defendant in a number of lawsuits in Arkansas alleging personal injury and wrongful death as a result of exposure to allegedly contaminated poultry litter.

Cargill notified its liability insurers of the Oklahoma and Arkansas litigation, requesting that the insurers defend and indemnify Cargill. Liberty Mutual agreed to pay its share of the reasonable and necessary defense costs in conjunction with Cargill's other insurance carriers for the Oklahoma and Arkansas lawsuits, subject to a complete reservation of rights, deductible provisions, and all other policy terms and conditions.[2] But because none of Cargill's insurers agreed to fully defend Cargill or pay defense costs without contribution from other insurers, Cargill chose to defend itself in the Oklahoma and Arkansas lawsuits.

In February 2007 Cargill filed a complaint in Hennepin County District Court seeking declaratory judgment and other relief against approximately 50 insurance carriers with whom Cargill had liability policies in effect, at some point, from 1957 to 2006.[3] Cargill asked the district court to declare that each insurer has a duty to provide a complete and undivided defense in the Oklahoma and Arkansas lawsuits and that each insurer has a duty to indemnify Cargill.[4] Liberty Mutual counterclaimed against Cargill, asking that the district court require Cargill to enter into a loan receipt agreement or to create such an agreement. In addition, Liberty Mutual filed cross-claims against several of Cargill's other insurers, asking the court to declare that Liberty Mutual had subrogation or contribution rights against these other insurers. Recognizing that the insurers' duty to indemnify depended on the resolution of the underlying lawsuits in Oklahoma and Arkansas, the district court decided to divide the lawsuit into two phases and to address the insurers' duty to defend in the first phase.

---

1. This court has stated the rule from *Iowa National Mutual Insurance Co. v. Universal Underwriters Insurance Co.,* 276 Minn. 362, 150 N.W.2d 233 (1967), in the following way: [W]here it can be argued, legitimately and in good faith, that either of two insurers has *primary* coverage for a claim, both insurers have a duty to defend that claim. If either insurer undertakes the defense, it is responsible for its own defense costs and cannot later seek reimbursement from the other. *Jostens, Inc. v. Mission Ins. Co.,* 387 N.W.2d 161, 167 (Minn.1986).

2. Liberty Mutual notes in its brief, however, that it has not made an unqualified admission that there is coverage under its policies for the Oklahoma and Arkansas lawsuits.

3. The record does not indicate when the damages alleged in the Oklahoma and Arkansas lawsuits first occurred.

4. Cargill claims that it incurred approximately $5.4 million in total defense costs by February 2007. Liberty Mutual contends that because Cargill has not provided any defense cost bills to its primary insurers since February 2007, the total cost of defense in the underlying litigation is presently unknown to the insurers.

■ In May 2007 several of the insurance companies, including Liberty Mutual, offered to pay Cargill's reasonable and necessary defense costs in the underlying actions, subject to the insurers' respective reservation of rights, and contingent on Cargill executing a loan receipt agreement.[5] Cargill refused to enter into a loan receipt agreement with the insurers. In October 2007 Liberty Mutual sent Cargill a check for partial payment for past defense costs, but again required that Cargill execute a loan receipt agreement. Under the proposed agreement, Liberty Mutual offered to pay Cargill's defense costs in the underlying actions if Cargill permitted Liberty Mutual to seek recovery of defense costs from other insurers that are determined to have a duty to defend Cargill. Cargill refused to enter into the loan receipt agreement with Liberty Mutual and returned the check. Cargill was concerned that it would have to bear part of the defense costs because, according to Cargill, some of Cargill's primary or lower-level insurance policies ("fronted policies") acted "merely as a retention or deductible, and do not provide Cargill with

any economic risk transfer of defense costs to the primary insurer."[6] Cargill alleges that some of these policies are in place to trigger umbrella and excess policy coverage. These fronted policies allegedly provide no defense costs coverage to Cargill because of retrospective premiums that were calculated to equal the losses paid, reinsurance of losses by a captive Cargill insurer, and high deductibles that match policy limits, thereby potentially subjecting Cargill to bearing part of the defense costs.

In November 2007 Cargill moved for partial summary judgment as to Liberty Mutual's duty to defend based on a single comprehensive general liability policy that was in effect from June 1969 to June 1972. Cargill asked the district court to declare that:

1. Cargill can select Liberty Mutual to exclusively and fully defend it in the underlying lawsuits;

2. Liberty Mutual cannot obtain contribution from Cargill or other insurers

**5.** Under a loan receipt agreement, an insurer makes a loan to the insured for defense costs, which the insured agrees to repay from amounts recovered from another insurer. *See Jostens,* 387 N.W.2d at 163; *see also Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh,* 658 N.W.2d 522, 527 (Minn.2003) (holding that a loan receipt agreement gave an insurer standing to seek contribution from other insurers for reimbursement of defense costs).

**6.** Although the precise arrangements of the fronted policies Cargill has in place are not entirely clear, "fronting," in general, is a situation where "an insurer, for a fee, issues a policy with the intent of passing most or all of the risk back to the policyholder, or to an unlicensed reinsurer or captive insurer." John F. O'Connor, *Insurance Coverage Settlements and the Rights of Excess Insurers,* 62 Md. L.Rev. 30, 47 n. 86 (2003) (citation omitted) (internal quotation marks omitted). Thus, fronted policies

are policies that have a deductible equal to the coverage available under the policy or require the policyholder to reimburse the insurer issuing the fronting policy for any amounts paid by the insurer under the policy. Similarly, policyholders sometimes create their own insurance company—called a captive insurer—to provide lower-level coverage solely to the policyholder and affiliated companies, with excess policies issued by noncaptive insurers applying over the limits of the captive insurer's coverage. In any of these situations, the policyholder's incentive may be to characterize a series of claims against it as arising out of a single occurrence in order to exhaust the "coverage" provided by the primary policy so the policyholder can access more favorable coverage available under its excess policies. *Id.* at 46–47.

without a loan receipt agreement with Cargill;

3. Cargill has no obligation to enter into a loan receipt agreement with Liberty Mutual; and

4. Liberty Mutual cannot recover defense costs from Cargill, directly or indirectly.

Liberty Mutual filed a cross-motion for summary judgment, asking that the court require Cargill to enter into a loan receipt agreement, or that the court create such an agreement, or that the court declare that such an agreement is not necessary in order for Liberty Mutual to seek contribution of defense costs from other liable insurers.

While these motions were pending, Cargill proposed a revised loan receipt agreement to Liberty Mutual, under which Liberty Mutual would agree not to make a claim for defense costs against Cargill or its subsidiaries. Cargill further proposed that Liberty Mutual indemnify Cargill against claims that other insurers may make against Cargill in connection with Liberty Mutual's attempts to seek contribution from other Cargill insurers. Liberty Mutual did not accept Cargill's proposed loan receipt agreement.

The district court ruled that Liberty Mutual has the right to seek contribution for defense costs from any other insurer who is determined to have a duty to defend Cargill in the underlying lawsuits, and the costs are to be shared equally among such insurers. The district court noted that Liberty Mutual did not deny its own duty to defend, but wanted all primary insurers to share defense costs. Because Liberty Mutual did not have privity of contract with the other insurers, the court determined, based on our ruling in

*Iowa National,* that Liberty Mutual needed either a loan receipt agreement with Cargill, or a court order requiring that costs be shared by the insurers. The court concluded that Cargill's refusal to sign a loan receipt agreement with Liberty Mutual was "because Cargill is concerned that would expose Cargill to claims that it is obligated to pay a share of defense costs to the extent that Cargill utilized 'fronted policies.'" This was inequitable, according to the court, because

> Cargill, a sophisticated business entity, has created this insurance structure, and it seems inequitable that they should now be permitted to avoid cooperating with Liberty Mutual (the insurer who[m] they have self-chosen to defend their liability claims) because of their concern that the insurance structure that they have created may have some adverse consequences to go along with the benefits they have received.

Therefore, the court declared that a loan receipt agreement was not necessary for Liberty Mutual to seek contribution for defense costs from other primary insurers. As an alternative, however, the court stated that it could impose a constructive loan receipt agreement between Liberty Mutual and Cargill. The district court then denied Cargill's motion for partial summary judgment, and certified for appellate review the question of whether "a court [can] order primary insurers, who insure the same insured for the same risks, and whose policies are triggered for defense purposes, to be equally liable for the costs of defense where there is otherwise no privity between the insurers."[7]

The court of appeals answered the certified question in the affirmative. *Cargill,*

---

**7.** A district court may certify an issue for appellate review "if the trial court certifies that the question presented is important and doubtful, from an order ... which denies a motion for summary judgment." Minn. R. Civ.App. P. 103.03(i).

*Inc. v. Ace Am. Ins. Co.*, 766 N.W.2d 58, 66 (Minn.App.2009).[8] In answering the certified question, the court of appeals first examined "whether a primary insurer with a duty to defend must normally enter into a loan receipt agreement in order to obtain contribution from other primary duty-to-defend insurers." *Id.* at 63. The court concluded that under *Iowa National Mutual Insurance Co. v. Universal Underwriters Insurance Co.*, 276 Minn. 362, 150 N.W.2d 233 (1967), and its progeny, because Liberty Mutual lacks contractual privity with co-primary duty-to-defend insurers, "Liberty Mutual has no right to contribution in the absence of a loan receipt agreement." *Cargill*, 766 N.W.2d at 64. Next, the court of appeals determined that where multiple primary insurers have offered a defense contingent on a loan receipt agreement, good-faith and fair-dealing principles require the insured to cooperate and enter into a "neutral loan receipt agreement that equitably apportions liability among primary insurers." *Id.* at 65. The court then concluded that Cargill's refusal to enter into a loan receipt agreement, thereby imposing multi-million dollar defense costs on one insurer, violated the cooperation clause of the Liberty Mutual policy and amounted to bad faith. *Id.* The court held that in such situations, a court can impose a constructive loan receipt obligation in order to equitably apportion defense costs among primary insurers with a duty to defend. *Id.* at 66.

The court of appeals dissent agreed with the majority that under the *Iowa National* rule, absent a loan receipt agreement, Liberty Mutual has no right to contribution from other insurers. *Id.* at 66 (Larkin, J., dissenting). But in contrast to the majority, the dissent concluded that the Liberty Mutual policy language does not require Cargill to enter into a loan receipt agreement, and the court should not write such a requirement into the policy. *Id.* at 68. Both parties petitioned for review of the court of appeals decision, and we granted review.

■ We apply a de novo standard of review because this case comes to us on petitions for review of the court of appeals' determination of a certified question. *See Larson v. Wasemiller*, 738 N.W.2d 300, 303 (Minn.2007). Because our interpretation of the *Iowa National* rule and its applicability is largely determinative of the certified question, we begin with analysis of that rule.

■ Cargill argues that under *Iowa National*, Liberty Mutual must provide a complete defense to Cargill and cannot pass part of that duty to other insurers. Cargill contends that Liberty Mutual is not entitled to recover from or have defense costs apportioned among other insurers in the absence of a loan receipt agreement or a waiver of the *Iowa National* rule by the insurers. In contrast, Liberty Mutual asserts that *Iowa National* is not applicable to this case because it is limited to situations where, unlike here, an insurer has already participated in the insured's defense and then seeks contribution. Liberty Mutual also argues that *Iowa National* should be limited to situations involving concurrent policies triggered by a discrete injury, and does not

---

**8.** In answering the certified question, the court of appeals framed the issue as follows: When an insured maintains numerous insurance policies and insurance arrangements and the insured demands that one primary insurer pay all defense costs and refuses to cooperate with that insurer to preserve a full right to contribution, does a district court have the authority to fashion a remedy that will allow the primary insurer to preserve its claim for contribution for defense costs?
*Cargill,* 766 N.W.2d at 62.

apply to successive policies triggered by a continuous occurrence.

In *Iowa National,* a vehicle owned by Mitchell Boyer, Inc., was involved in an accident. 276 Minn. at 364, 150 N.W.2d at 235. Universal Underwriters Insurance Company, the company insuring Mitchell Boyer, refused to defend the driver of the vehicle owned by Mitchell Boyer in an action brought by the injured party, so Iowa National Mutual Insurance Company, the driver's own insurer, defended him.[9] *Id.* at 364, 150 N.W.2d at 235. After the personal injury case settled, Iowa National sought to recover its defense costs from Universal, and we stated the issue as follows: "whether expenses incurred by an 'excess carrier' from the time it tendered defense until the 'primary carrier' accepts the defense are recoverable where there is a bona fide dispute as to the nature and extent of liability as between the two carriers." *Id.* at 364, 150 N.W.2d at 234–35. After identifying the issue, we examined whether Iowa National was "entitled to recover [defense costs] *on any theory,*" whether contractual or equitable. *Id.* at 365, 150 N.W.2d at 235 (emphasis added).

We noted that there was no contractual privity between Iowa National and Universal that would make one insurer accountable to the other, and we reiterated that "[t]he obligation of defending an insured and paying for the defense is a separate obligation existing exclusively between the insurer and the insured." *Id.* at 366–67, 150 N.W.2d at 236. We emphasized that the lack of a contractual relationship between the insurers does not alter their duties to the insured, with whom the insurers do have a contract, and that "[w]ith regard to the providing of a defense, [the insured] has double insurance and may call upon *either or both* carriers to fulfil their policy obligations in this respect." *Id.* at 367–68, 150 N.W.2d at 237 (emphasis added) (citation omitted) (internal quotation marks omitted). Further, we stated that "'[t]he duty to defend is personal to each insurer. The obligation is several and the carrier is not entitled to divide the duty nor require contribution from another absent a specific contractual right.'" *Id.* at 368, 150 N.W.2d at 237 (quoting *U.S. Fid. & Guar. Co. v. Tri–State Ins. Co.,* 285 F.2d 579, 582 (10th Cir.1960)).

After concluding that there was no contractual basis for Iowa National to seek defense costs from Universal, we rejected Iowa National's claim for recovery based on the theory of contribution: "[T]he two companies have no joint liability or common obligation. Both were obligated to defend under separate contractual undertakings which would not support a common obligation for the purpose of invoking the principle of contribution." *Id.* at 368, 150 N.W.2d at 237. In addition to rejecting recovery based on contribution, we found no right of recovery based on subrogation (legal or conventional), because we viewed each company as having "a separate and distinct obligation to defend." *Id.* at 368, 150 N.W.2d at 237. We also concluded that Iowa National had agreed to assume the risk of having to defend a lawsuit, and defense costs were simply part of its cost of doing business. *Id.* at 369, 150 N.W.2d at 237–38.

Therefore, the general rule from *Iowa National* is that an insurer that defends or participates in the defense of an insured has no basis for seeking recovery of de-

---

9. At the time of the original lawsuit, the two insurers disputed which was the primary carrier and which provided excess coverage; based on policy language, we earlier determined that Iowa National was an excess insurer and Universal was the primary carrier. *See Lowry v. Kneeland,* 263 Minn. 537, 543, 117 N.W.2d 207, 211 (1962).

fense costs from another insurer. We reaffirmed the *Iowa National* rule in *St. Paul School District No. 625 v. Columbia Transit Corp.*, 321 N.W.2d 41, 48 (Minn. 1982), and *Nordby v. Atlantic Mutual Insurance Co.*, 329 N.W.2d 820, 824 (Minn. 1983).

It is true that the facts of *Iowa National* are distinguishable from the facts here insofar as the insurer in *Iowa National* actually defended the insured, and here, no insurer has yet provided a defense or incurred defense costs. But curbing *Iowa National's* applicability based solely on this principle would oversimplify the matter. The certified question from the district court, as well as Liberty Mutual's claim on petition for cross-review, essentially asks us to determine not only whether Liberty Mutual currently has a right to have defense costs apportioned among other insurers when it has not paid any costs, but also whether Liberty Mutual would have a right to reimbursement or contribution from other insurers if it pays defense costs or defends Cargill.

■ The duty to defend an insured is contractual and is broader than the duty to indemnify. *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn.1997). In *Iowa National* we rejected, on every theory possible, the contention that an insurer has a right to recovery of defense costs by concluding that (1) there is no contractual privity between insurers, (2) there is no right to contribution from another insurer, and (3) there is no right of recovery based on subrogation. If under the *Iowa National* rule an insurer has no grounds (neither contractual nor equitable) to recover defense costs from another insurer *after* it has provided a defense or made defense payments, then a fortiori an insurer that has not provided a defense or made defense payments has no grounds to recover defense costs from another insurer who also has not shared in the duty to defend. It is accurate to say that under *Iowa National*, Liberty Mutual does not currently possess a right to have defense costs shared among insurers, and absent some exception, would not possess that right even if it defends Cargill or pays defense costs. Accordingly, although the facts of *Iowa National* are distinguishable from this case, nevertheless the principles underlying the *Iowa National* rule's broad prohibition against an insurer having a right to recovery of defense costs are still applicable.

But since *Iowa National* was decided, we have found several exceptions to it that have limited its applicability. In *Jostens, Inc. v. Mission Insurance Co.*, for example, we reiterated that, under *Iowa National*, if two insurers have primary coverage for a claim, the insurer who undertakes to defend the insured "is responsible for its own defense costs and cannot later seek reimbursement from the other." *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 167 (Minn.1986). We held, however, that if neither primary insurer undertakes the defense, the insured may recover its costs in defending the claim from either or both insurers and that "the insurers, as between them, shall be equally liable for the insured's defense costs." [10]

10. It is not clear in *Jostens* whether we held that the insurers should be equally liable for defense costs because there was a loan receipt agreement in place, or whether we apportioned costs equally without regard to the loan receipt agreement:

[W]e look at the situation as it was for Jostens at the time it was confronted with [the] allegations [ (i.e., before the loan receipt agreement) ]. Viewed from this standpoint it hardly seems fair Mission should now be responsible for the entire costs simply because Jostens has selected

*Id.* In *Home Insurance Co. v. National Union Fire Insurance of Pittsburgh,* we created another exception to the *Iowa National* rule that allowed one insurer to seek contribution from other insurers toward defense costs where the insured had entered into a loan receipt agreement with one of its insurers. *Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh,* 658 N.W.2d 522, 527 (Minn.2003). Most recently, in *Wooddale Builders, Inc. v. Maryland Casualty Co.,* we concluded that the *Iowa National* rule did not bar allocation of defense costs among insurers because the insurers had specifically waived application of the *Iowa National* rule. *Wooddale Builders, Inc. v. Md. Cas. Co.,* 722 N.W.2d 283, 302 n. 15, 304 (Minn. 2006).

Here, none of the exceptions to the *Iowa National* rule apply: there is no loan receipt agreement in place because the insured refuses to execute one, and the insurers have not agreed amongst themselves to waive the *Iowa National* rule. In this case, Liberty Mutual urges us to carve out yet another exception to *Iowa National* by limiting *Iowa National* to situations involving concurrent policies triggered by a discrete injury or to look to language in *Jostens* suggesting that even in the absence of a loan receipt agreement, we should apportion costs equally among co-primary insurers who have a duty to defend when no insurer has defended or provided defense costs. Before considering whether to create another exception to *Iowa National* or to adopt Liberty Mutu-

al's interpretation of some of our statements in *Jostens,* we first consider some of our previous statements in *Jostens* and the *Iowa National* rule itself.

In *Jostens,* we explained that an insurer assuming the defense of the insured "has no cause to complain [about the absence of monetary assistance from other insurers] because it is protecting its own interests and is only doing what it agreed and was paid a premium to do." 387 N.W.2d at 166. But where no insurer voluntarily assumes the defense, we noted that "it hardly seems fair" that one insurer "should now be responsible for the entire costs simply because [the insured] has selected [it] rather than [another insurer] to pay them." *Id.* at 167. We observed: "Who should pay the insured's defense costs should not depend on the whim or caprice of the insured, when, at the time the defense was needed, both insurers arguably had a duty to defend." *Id.* We further observed that "any rule we fashion should not encourage two insurers with arguable coverage to adopt a 'wait and see' attitude while leaving the insured to defend [it-]self," particularly because, as we noted, "[n]ot all insureds can afford ... to pay their own way initially." *Id.* We sought to develop a rule that "will encourage two insurers, when tendered a defense, to resolve promptly the duty to defend issue either by some cooperative arrangement between them, or by a declaratory judgment action, or by some other means." *Id.* In other words, in *Jostens* we were con-

Mission rather than Wausau to pay them. Who should pay the insured's defense costs should not depend on the whim or caprice of the insured, when, at the time the defense was needed, both insurers arguably had a duty to defend.

387 N.W.2d at 167. Further, we said that "[t]he loan receipt agreement changes nothing here." *Id.* at 165. But in *Domtar, Inc. v. Niagara Fire Insurance Co.,* we cited *Jostens*

and held that where there was more than one primary insurer with a duty to defend, the insured was permitted to seek all defense costs from one of the liability insurers when none of the insurers provided a defense, and we did not specify whether the insurer then had a right to seek partial recovery of defense costs from any other insurer. *Domtar, Inc. v. Niagara Fire Ins. Co.,* 563 N.W.2d 724, 739 (Minn.1997).

cerned with fairness to the insurers and the insured, and sought a rule that encouraged insurers to fulfill their respective duties to defend. We suggested, without expressly holding, that even in the absence of a loan receipt agreement, we would apportion costs equally among co-primary insurers with a duty to defend. Consequently, some of our statements in *Jostens* are in tension with *Iowa National* given that in *Iowa National*, we dismissed principles of equity as providing grounds for recovery in deciding the allocation of defense costs.

Further, in *Jostens*, we held that "[i]f it is established that both insurers arguably had coverage at the time of the rejected defense tender, the insurers, as between them, shall be equally liable for the insured's defense costs." 387 N.W.2d at 167. Although suggesting that insurers would be equally liable even if an insured sought defense costs from only one primary insurer, *Jostens* left unanswered the question of the grounds on which such sharing of defense costs would be based.

In *Iowa National*, however, we rejected the notion that one insurer with a duty to defend the insured had a right to seek contribution from another insurer which also had a duty to defend the insured, citing *Hartford Accident & Indemnity Co. v. Anderson*, 192 Minn. 200, 256 N.W. 185 (1934). *Iowa Nat'l*, 276 Minn. at 368, 150 N.W.2d at 237. In *Hartford*, the administrator of an estate failed to tender to the estate the proceeds from the sale of real property. 192 Minn. at 201, 256 N.W. at 185. Two surety bonds were applicable: a general bond based on the value of the estate and a special "sale bond" required before property of the estate could be sold. *Id.* at 202, 256 N.W. at 185. Having made good on the administrator's defalcation, the issuer of the sale bond sought contribution from the issuer of the general bond.

*Id.* at 201, 256 N.W. at 185. We held that, although there was common liability to the insured, "[the issuer of the sale bond] has paid no more than his just share thereof." *Id.* at 202, 256 N.W. at 185. There was no right of contribution because the issuer of the sale bond "is answering for only his own just and proper share of the default, which is the whole thereof." *Id.* at 202, 256 N.W. at 185. In other words, one party was primarily liable, and one party was only secondarily liable.

But in a situation such as the one presented here, where the claims against Cargill extend beyond the period covered by any one insurance policy and pertain to co-primary insurers, we cannot say that any insurer that undertakes to defend Cargill in any of these lawsuits would be "answering for only his own just and proper share" of the defense. Rather, in this case Liberty Mutual has agreed to defend Cargill only with respect to claims of damages caused by "an occurrence," that is, "an accident . . . which results, *during the policy period*, in bodily injury or property damage." (Emphasis added.) Cargill has notified insurers other than Liberty Mutual providing primary coverage, thereby also triggering their duty to defend if the underlying claims arguably fall within the respective policies' scope of coverage. *See Wooddale*, 722 N.W.2d at 302; *Home*, 658 N.W.2d at 529, 534. Therefore, although Liberty Mutual may have an obligation to defend Cargill, there is a common liability among all of the primary insurers that have a duty to defend.

From the time that Liberty Mutual received notification of the underlying lawsuits, it agreed to defend Cargill, but contingent on Cargill executing a loan receipt agreement, presumably because Liberty Mutual was aware that if it defended Cargill or paid defense costs, Liberty Mutual would not have been able to recover any

defense costs from other insurers without a loan receipt agreement. If Liberty Mutual (or the other insurers) knew that Minnesota recognized an equitable right of contribution, and absent the *Iowa National* rule, we would likely not have this present case before us.

The *Iowa National* rule does little to encourage insurers to "resolve promptly the duty to defend issue." *Jostens*, 387 N.W.2d at 167; *accord Wooddale*, 722 N.W.2d at 303. Rather, the *Iowa National* rule encourages any insurer whose policy is arguably triggered to deny its insured a defense and, essentially, play the odds that, among all insurers on the risk, it will not be selected by the insured to defend.

We conclude that the *Iowa National* rule, even as we have modified it over the years, is no longer an appropriate result when multiple insurers may be obligated to defend an insured. There is little incentive for any single carrier to voluntarily assume the insured's defense. To the contrary, under *Iowa National* an insurer who voluntarily assumes the defense finds itself bearing the entire cost of the insured's defense unless the insured enters into a loan receipt agreement. As this case demonstrates, that the insured will enter into a loan receipt agreement is by no means assured.

■■■ We are "extremely reluctant to overrule our precedent under principles of *stare decisis*" and "require a compelling reason" before overruling a prior decision. *State v. Martin*, 773 N.W.2d 89, 98 (Minn. 2009) (citation omitted) (internal quotation marks omitted). Stare decisis promotes stability in the law, but it "does not bind [the court] to unsound principles." *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn.2000). We believe that the *Iowa National* rule is contrary to principles of equity, is at odds with some of our statements in *Jostens* and *Wooddale* that suggest that defense costs should be allocated equally if no insurers defend an insured, and can hardly be said to promote prompt responses from insurers to fulfill their duty to defend. *See, e.g., Redeemer Covenant Church of Brooklyn Park v. Church Mut. Ins. Co.*, 567 N.W.2d 71, 82 n. 16 (Minn.App.1997) ("In light of *Nordby* and its predecessor, *Iowa Nat'l Mut. Ins. v. Universal Underwriters Ins. Co.*, 276 Minn. 362, 150 N.W.2d 233 (1967), we affirm the district court's holding, even as we agree with its observation that precluding an insurer who defends from bringing an action against a non-defending insurer absent a loan agreement may reward insurers for refusing to defend."). In addition, the *Iowa National* rule arose in the context of a two-car accident and is ill-suited for the complexity of modern mass torts, multiple-party litigation, and disputes involving consecutive liability policies and injuries with long-latency periods.

Although some jurisdictions have held, as we did in *Iowa National*, that a primary insurer cannot obtain contribution[11] from

---

11. Equitable contribution may be defined as the right to recover, not from a party primarily liable for the loss, but from a co-obligor or co-insurer who shares common liability with the party seeking contribution.... The right of contribution is not derivative of the rights of the insured, but belongs to each insurer independently to seek reimbursement from a co-insurer those sums which were paid in excess of an insurer's proportionate share of the common obligation.
*U.S. Fid. & Guar. Co. v. Federated Rural Elec. Ins. Corp.*, 37 P.3d 828, 832 (Okla.2001); *accord Roemhildt v. Gresser Cos., Inc.*, 729 N.W.2d 289, 298 (Minn.2007) ("Contribution is the remedy securing the right of one who has discharged more than his fair share of a common liability or burden to recover from another who is also liable the proportionate

a co-primary insurer that refused to defend, these cases represent the minority view.[12] Most courts have held that an insurer has an equitable right, whether by contribution or subrogation, to recover defense costs, at least partially, when primary insurers also have a duty to defend a common insured; this has been described as "the better-reasoned view." [13] Allan D. Windt, *Insurance Claims and Disputes: Representation of Insurance Companies and Insureds* § 10:3, at 199–201 (4th ed. 2001); *see also* 1 Rowland H. Long, *The Law of Liability Insurance* § 5.07[1], at 5–97 (2009) ("[A]n increasing number of courts recognize that it is unfair to require one insurer to bear the entire burden of defense costs."); Douglas R. Richmond, *Issues and Problems in "Other Insurance," Multiple Insurance, and Self-Insurance,* 22 Pepp. L.Rev. 1373, 1426 (1995) ("The majority position sounds in equity, and indeed is supported by fairness and logic." (footnote omitted)).

We conclude that a co-primary insurer's right to contribution from other primary insurers that have a duty to defend is supported by public policy and is the better reasoned position. Again, our statements in *Jostens* suggest, contrary to our statements in *Iowa National,* that an insurer has some equitable right to have defense costs apportioned. Therefore, where more than one primary insurer covers the same risk and an insurer discharges a common obligation also belonging to another insurer, we conclude, contrary to *Iowa National,* that a right to equitable contribution should exist in these circumstances. *See, e.g., N. Ins. Co. of N.Y. v. Allied Mut. Ins. Co.,* 955 F.2d 1353, 1360 (9th Cir.1992) (applying California law in recognizing that coverage of the same risk by multiple insurers creates a common obligation). Indeed, we have recognized a right to contribution based on a common liability in analogous situations even though the liabilities arose from different sources. *Peterson v. Little–Giant Glencoe Portable Elevator Div. of Dynamics Corp. of Am.,* 366 N.W.2d 111, 116–17 (Minn. 1985) (holding that even though a manufacturer and an employer were liable to an employee based on separate obligations, there was a common liability to the em-

---

share which the other should pay or bear." (citation omitted) (internal quotation marks omitted)).

**12.** Courts that have not recognized an insurer's right to equitable contribution from other insurers include the following: (1) Florida: *Cont'l Cas. Co. v. United Pac. Ins. Co.,* 637 So.2d 270, 272–73 (Fla.Dist.Ct.App.1994); (2) Oklahoma: *Fid. & Cas. Co. of N.Y. v. Ohio Cas. Ins. Co.,* 482 P.2d 924, 926 (Okla.1971); and (3) South Carolina: *Sloan Constr. Co. v. Cent. Nat'l Ins. Co. of Omaha,* 269 S.C. 183, 236 S.E.2d 818, 820 (1977).

**13.** Courts that have recognized an insurer's right to contribution or right to have defense costs shared in some way include the following: (1) Alaska: *Marwell Constr., Inc. v. Underwriters at Lloyd's, London,* 465 P.2d 298, 313 (Alaska 1970); (2) Arizona: *Nat'l Indem. Co. v. St. Paul Ins. Cos.,* 150 Ariz. 458, 724 P.2d 544, 545 (1986); (3) California: *Cont'l Cas. Co. v. Zurich Ins. Co.,* 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455, 460–62 (1961); (4) Colorado: *Nat'l Cas. Co. v. Great Sw. Fire Ins. Co.,* 833 P.2d 741, 747–48 (Colo.1992); (5) Connecticut: *Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co.,* 264 Conn. 688, 826 A.2d 107, 123–24 (2003); (6) New Hampshire: *Liberty Mut. Ins. Co. v. Home Ins. Indem. Co.,* 116 N.H. 12, 351 A.2d 891, 894 (1976); (7) New Jersey: *Marshall v. Raritan Valley Disposal,* 398 N.J.Super. 168, 940 A.2d 315, 320 (2008); (8) Pennsylvania: *J.H. France Refractories Co. v. Allstate Ins. Co.,* 534 Pa. 29, 626 A.2d 502, 509 (1993); (9) Tennessee: *United Servs. Auto. Ass'n v. Hartford Acc. & Indem. Co.,* 220 Tenn. 120, 414 S.W.2d 836, 841 (1967); (10) Utah: *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.,* 931 P.2d 127, 137–38 (Utah 1997); and (11) Washington: *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.,* 164 Wash.2d 411, 191 P.3d 866, 872–74 (2008).

ployee creating a right to contribution between them).

Accordingly, we overrule *Iowa National* and hold that a primary insurer that has a duty to defend, and whose policy is triggered for defense purposes, has an equitable right to seek contribution for defense costs from any other insurer who also has a duty to defend the insured, and whose policy has been triggered for defense purposes.

■ Further, we note that the district court stated in its order that

> Liberty Mutual has the right to seek contribution for defense costs from any other insurer who has a duty to defend Cargill for the claims asserted against Cargill in the underlying litigation [and that] [o]nce a determination is made regarding which insurers have a defense obligation, those insurers with such an obligation shall be responsible in equal shares for the cost of defense of those claims.

An equal share for costs of defense among co-primary insurers is consistent with our approach in previous cases. *Wooddale,* 722 N.W.2d at 303–04 ("If insurers know from the beginning that defense costs will be apportioned *equally among* insurers whose policies are triggered, the possibilities for delay will be minimized because no insurer will benefit from delaying or refusing to undertake a defense. Therefore, we conclude that when the pro-rata-by-time-on-the-risk method applies to allocation of liability, and insurers participate in providing a defense to a common insured ...

defense costs are apportioned equally among insurers whose policies are triggered."); *Jostens,* 387 N.W.2d at 167 ("If it is established that both insurers arguably had coverage at the time of the rejected defense tender, the insurers, as between them, shall be equally liable for the insured's defense costs. . . .").[14]

■ But breach of a duty to defend precludes application of an equitable right to contribution. *See Fred O. Watson Co. v. U.S. Life Ins. Co.,* 258 N.W.2d 776, 778 (Minn.1977) (noting the maxim that "one who comes into equity must come with clean hands"). Therefore, in addition to determining which insurers have a duty to defend Cargill, on remand the district court must determine whether Liberty Mutual breached its duty to defend Cargill.[15]

Affirmed.

PAGE, Justice, and DIETZEN, Justice, took no part in the consideration or decision of this case.

■

---

**14.** Although we recognize a co-primary insurer's right to equitable contribution, we continue to recognize that an insurer's duty to defend is not triggered until the insured has provided the insurer "with notice of a suit and opportunity to defend." *See Home,* 658 N.W.2d at 534.

**15.** We are not suggesting that Liberty Mutual's actions did in fact constitute a breach of the duty to defend; that issue is not before us. We provide this instruction because in affirming the court of appeals, although on different grounds, we also clarify that an insurer seeking to exercise a right to equitable contribution may be precluded from doing so if the insurer breached a duty to defend the insured.