*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1712**

State of Minnesota,
Appellant,

vs.

N. D. S.,
Respondent.

**Filed July 11, 2016
Reversed
Ross, Judge
Concurring specially, Johnson, Judge**

Hennepin County District Court
File No. 27-CR-94-110569

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for appellant)

Joshua B. Esmay, Council on Crime and Justice, Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Larkin, Judge.

# UNPUBLISHED OPINION

**ROSS**, Judge

N.D.S. pleaded guilty to a felony in 1995, but the felony reduced to a misdemeanor by statute after the district court stayed the imposition of a sentence and N.D.S. completed

probation. N.D.S. successfully petitioned the district court to expunge the conviction under the misdemeanor provision of Minnesota's recently amended expungement statute. This court held in *State v. S.A.M.* that a felony conviction that was later reduced to a misdemeanor after a stay of imposition is not eligible for expungement as a misdemeanor. Based on the holding of *S.A.M.*, we reverse.

**FACTS**

The state charged N.D.S. in 1995 with second-degree attempted murder. She pleaded guilty to aiding an offender, a felony. The district court stayed the imposition of her sentence and imposed probationary terms, which she met, successfully completing probation in 1999.

In 2015, N.D.S. petitioned the district court to expunge the aiding-an-offender conviction and several driving-related convictions, relying on the newly amended expungement statute, Minnesota Statutes section 609A.02, subdivision 3(a)(3) (2014). The district court applied the statute to N.D.S.'s aiding-an-offender conviction, reasoning that the felony conviction became a misdemeanor eligible for misdemeanor expungement. The district court granted the petition for expungement for all of N.D.S.'s offenses, and the state appeals only the expungement of the once-felony, aiding-an-offender conviction.

**D E C I S I O N**

The state argues that the aiding-an-offender conviction is not eligible for expungement because it must be treated as a felony and it is not one of the felonies listed in the statute as eligible for expungement. N.D.S. relies on the plain language of the

2

misdemeanor expungement provision and emphasizes that her offense became a misdemeanor under Minnesota Statutes section 609.13, subdivision 1(2) (2014).

We generally review a district court's decision to grant or deny an expungement petition for abuse of discretion. *State v. K.M.M.*, 721 N.W.2d 330, 332–33 (Minn. App. 2006). But whether N.D.S.'s conviction is eligible for expungement as a misdemeanor due to the stay of imposition is an issue of statutory interpretation, which we review de novo. *State v. L.W.J.*, 717 N.W.2d 451, 455 (Minn. App. 2006). And we have recently decided the legal issue against the position that N.D.S. urges us to adopt.

We answered the issue in *State v. S.A.M.*, 877 N.W.2d 205 (Minn. App. 2016), *review granted* (Minn. May 31, 2016). There we noticed the past-tense reference in the statute, which affords the opportunity for expungement for a petitioner who "*was* convicted of or received a stayed sentence for a misdemeanor." *Id.* at 209 (emphasis added) (quoting Minn. Stat. § 609A.02, subd. 3(a)(3)). We held that because the district court entered a judgment of conviction for a felony, the offender "*was* convicted" of a felony and "received a stayed sentence" for a felony rather than for a misdemeanor, statutory expungement was unavailable even though the felony conviction later reduced to a misdemeanor. *Id.* In sum, an offender convicted of a felony cannot obtain relief under the misdemeanor expungement provision, subdivision 3(a)(3), even if the offense was later deemed a misdemeanor after a stay of imposition of sentence. *Id.* at 210.

*S.A.M.* is a published decision of this court, and as such, it binds this court and all lower courts. *See State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010) (holding that "[t]he district court, like this court, is bound by . . . the published opinions of the court of

3

appeals"), *review denied* (Minn. Sept. 21, 2010). N.D.S. argued through counsel during oral argument that we should depart from *S.A.M.*'s holding because it is merely a recent decision and, accordingly, should be given little precedential weight. In a citation of supplemental authority, N.D.S. directs our attention to the United States Supreme Court's discussion of stare decisis in *Montejo v. Louisiana*, 556 U.S. 778, 129 S. Ct. 2079 (2009). The *Montejo* Court overruled the Supreme Court's prior decision in *Michigan v. Jackson*, 475 U.S. 625, 106 S. Ct. 1404 (1986), decided more than 20 years earlier. *Id.* at 797, 129 S. Ct. at 2091. The Court stated that the stare decisis factors of the antiquity of the precedent and reliance interest on the prior decision weighed in favor of overruling the two-decade-old precedent because "eliminating it would not upset expectations." *Id.* at 792–93, 129 S. Ct. at 2088–89. Although it is true that the *S.A.M.* holding is so new that it has likely been relied upon little, its novelty prevents the analysis of a different stare decisis factor, which is whether the decision has shown itself to be unworkable. *Id.* at 792, 129 S. Ct. at 2088.

The foundation of the stare decisis doctrine does not support overruling our recent decision. Stare decisis is often said to promote "the evenhanded, predictable, and consistent development of legal principles," to foster "reliance on judicial decisions," and to contribute "to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S. Ct. 2597, 2609 (1991). The questions of reliability and predictability are even dicier when an intermediate appellate court, like this one, is asked to disregard its recent holdings. Because this court answers appeals in three-judge panels rather than with all of its members, the invitation to urge "the court" (a panel of three judges) that "the court" (a *different* panel of three judges) erred in a recent legal

4

decision would effectively entice appeals rather than stabilize law. It is true that, as the legislature has recognized, this court has the authority to "overrule a previous Court of Appeals' decision not reviewed by the [Minnesota] Supreme Court." Minn. Stat. § 480A.08, subd. 3(c)(2) (2014). But as the legislature has also implicitly recognized, our published opinions can and often do have the effect of indirectly "establish[ing] a new rule of law." *Id.* subd. 3(c)(1) (2014). Aware that our precedent is relied upon in this way, we are inclined strongly against putting aside the doctrine of stare decisis in a manner that would tend generally to undermine stability of the rule of law.

We decline N.D.S.'s request to disregard either the doctrine of stare decisis or our decision in *S.A.M.* (which, incidentally, appears to us to be sound). Because N.D.S. does not attempt to distinguish her case from *S.A.M.* and only urges that we abandon it, we follow *S.A.M.* and hold that the district court erred in finding that N.D.S.'s aiding-an-offender conviction could be expunged under the misdemeanor provision of the expungement statute. In doing so, we observe that the district court answered N.D.S.'s petition without the benefit of the *S.A.M.* opinion.

**Reversed**

**JOHNSON**, Judge (concurring specially)

I concur in the opinion of the court insofar as it concludes that we are bound by this court's precedential opinion in *State v. S.A.M.*, 877 N.W.2d 205 (Minn. App. 2016), *review granted* (Minn. May 31, 2016), although I reach that conclusion for slightly different reasons.

The doctrine of *stare decisis* consists of a general rule and an exception to the general rule. The general rule is, of course, that appellate courts follow their precedents. The exception is that an appellate court may, on occasion, overrule a precedent. The exception is a narrow one, to be invoked rarely or extremely rarely, and only if there is a "compelling reason." *Cargill, Inc. v. Ace American Ins. Co.*, 784 N.W.2d 341, 352 (Minn. 2010) (quotation omitted); *see also Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 843-46 (Minn. 1991) (Coyne, J., dissenting). Day after day, in opinion after opinion, appellate courts apply the general rule without even discussing the exception. Such an approach promotes the important values of "stability, order, and predictability." *Fleeger v. Wyeth*, 771 N.W.2d 524, 528-29 (Minn. 2009) (quotation omitted).

To the extent that the exception to the general rule is discussed, it must be recognized that the appropriateness of the exception depends on the circumstances. For example, the exception is most likely to be triggered with respect to an issue of the common law. In that context, the judicial branch alone has shaped the law and, accordingly, is alone responsible for ensuring that the law continues to serve its purposes and remains clear. *See* Benjamin N. Cardozo, *The Nature of the Judicial Process* 150-56 (1921). On the other hand, the exception is much less likely to be triggered with respect to an issue of statutory

CS-1

interpretation. In that context, "stare decisis requires that we not overturn our previous construction, now 'part of the statute as though written therein.'" *In re Civil Commitment of Ince*, 847 N.W.2d 13, 21 (Minn. 2014) (quoting *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012)). The exception also is very narrow in statutory cases because the legislature may amend a statute if it disagrees with an appellate court's interpretation of the statute. *See Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015) (noting that "*stare decisis* carries enhanced force when a decision . . . interprets a statute" because "critics . . . can take their objections" to the legislature). In the modern era, this court applies statutes far more often than it applies the common law.

Furthermore, the exception to the general rule of *stare decisis* is more likely to be invoked by a court of last resort, which is responsible for making final, definitive statements of law. If and when the rare case comes along for which the exception is compelling, an intermediate appellate court may trust that the court of last resort will recognize the compelling reason. This is especially true of the Minnesota state courts. In recent years, the Minnesota Supreme Court typically has granted approximately 10 to 15 percent of petitions for further review of decisions of this court,[1] which allows the supreme court to review approximately 3 to 4 percent of the decisions of this court.[2] By comparison, the United States Supreme Court typically grants approximately 1 percent of the certiorari

---

[1]*See, e.g.*, Minnesota Judicial Branch, *2015 Annual Report to the Community* 52 (2016), http://www.mncourts.gov/mncourtsgov/media/assets/documents/reports/2015 AnnualReport.pdf (615 petitions for further review filed and 73 granted in 2015).

[2]*See, e.g.*, *id.* at 50, 52 (2,054 dispositions by court of appeals and 73 petitions for further review granted by supreme court in 2015).

petitions that are filed,[3] which allows the Supreme Court to review approximately 0.1 percent of the decisions of the federal circuit courts.[4]  Because the federal judiciary is so large, there is a mechanism by which the federal circuit courts may overrule their own precedents: rehearing *en banc*.  *See* Fed. R. App. P. 35.  This court presently has no such mechanism.  *See generally* Minn. App. Spec. R. Pract.; *cf.* Minn. App. Internal R. 4.2, 4.4 (1987); Minn. App. Internal R. 4.4, 4.5, 4.8, 4.9 (1983).  This court does not need a mechanism for overruling its own precedents because litigants already have a meaningful opportunity to correct a decision of this court that is incorrect; they may ask the supreme court to overrule it.  *See* Minn. R. Civ. App. P. 117.  The supreme court responds to such requests by overruling this court's precedents with relative frequency.

In this case, the central issue is an issue of statutory interpretation.  At oral argument, respondent asked this court, an intermediate appellate court, to overrule our precedential opinion in *S.A.M.*, which we had issued only three weeks earlier.  In my view, respondent's argument presented no reasons to consider invoking the exception to the general rule of *stare decisis*.  Since oral argument, respondent's request that we overrule *S.A.M.* became

---

[3]Supreme Court of the United States, *The Justices' Caseload*, http://www. supremecourt.gov/about/justicecaseload.aspx (last visited June 30, 2016) (approximately 7,000 to 8,000 cases filed each Term and approximately 80 cases given plenary review).

[4]Kedar S. Bhatia, *Stat Pack for October Term 2015* 3, SCOTUSblog (June 29, 2016), http://www.scotusblog.com/wp-content/uploads/2016/06/SB_stat_pack_OT15.pdf (63 decisions of federal circuit courts reviewed by Supreme Court in October Term 2015 on writ of certiorari); Administrative Office of United States Courts, *U.S. Courts of Appeals – U.S. Courts of Appeals – Cases Filed, Terminated, and Pending During the 12-Month Periods Ending December 31, 2014 and 2015 (Table B)*, http:// www.uscourts.gov/statistics/table/b/statistical-tables-federal-judiciary/2015/12/31 (52,881 cases decided by federal circuit courts in 2015).

even weaker when the supreme court granted the petition for further review in that case. *See State v. S.A.M.*, No. A15-0950 (Minn. May 31, 2016) (order). We may safely assume that the supreme court soon will issue an opinion in *S.A.M.* that makes a definitive statement of law on the central issue in this case. Thus, there is no reason whatsoever for this court to reconsider its holding in *S.A.M.* in the course of deciding this case.

For these reasons, I join, without the least bit of hesitation, in the court's decision to follow our precedential opinion in *S.A.M.*